STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
RUUSKA

Docket No. 63553. Argued June 3, 1980 (Calendar No. 3).—Decided
    January 8, 1982.

State Farm Mutual Automobile Insurance Company brought an
    action against Dale Ruuska, Gloria Carlson, Arvid Carlson, and
    Kenneth Kemp, the parties in an automobile negligence action,
    for a declaratory judgment that it was not liable to the parties
    for residual liability coverage on a no-fault policy of automobile
    insurance it had issued to Gloria Carlson. Gloria Carlson, who
    lived with her father, Arvid, was in an accident while driving
    Arvid's car. Dale Ruuska was seriously injured, and brought an
    action against the Carlsons and Kemp, the owner of a tavern.
    State Farm admitted liability under a policy issued to Arvid
    Carlson, but denied any liability under the policy issued to
    Gloria because the policy provided coverage while she was
    driving a non-owned automobile, but excluded from the defini-
    tion of non-owned automobile one owned by a relative residing
    in the same household. The Marquette Circuit Court, Edward
    A. Quinnell, J., granted summary judgment for Ruuska, hold-
    ing that the exclusion is contrary to the provisions of the no-
    fault act and therefore invalid. The Court of Apepals, D. E.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 5, 11, 12, 14-16] 7 Am Jur 2d, Automobile Insurance §§ 238, 241,
    242, 356.
    Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.
    Exclusion from "drive other cars" provision of automobile liability
    insurance policy of other automobile owned, hired, or regularly
    used by insured or member of his household. 86 ALR2d 937.
[2, 8] 7 Am Jur 2d, Automobile Insurance § 348.
[3, 5, 10, 14] 7 Am Jur 2d, Automobile Insurance § 351.
    What is a "non-owned" automobile within the meaning of the
    coverage clause of an automobile liability policy. 83 ALR2d 926.
[4] 7 Am Jur 2d, Automobile Insurance §§ 34, 356.
[6-9] 7 Am Jur 2d, Automobile Insurance § 351.
[8] 7 Am Jur 2d, Automobile Insurance § 23.
[9] 7 Am Jur 2d, Automobile Insurance § 367.
[13] 7 Am Jur 2d, Automobile Insurance § 126.

Holbrook, Jr., and Cynar, JJ. (D. E. Holbrook, P.J., concurring in result), affirmed, but on the ground that while the exclusion is permissible it was not plainly set out in the policy and was therefore unenforceable (Docket No. 78-820). State Farm appeals.

In separate opinions by Justice Williams, by Justice Levin, and by Chief Justice Coleman, the Supreme Court *held:*

In this case, the insurer is liable to the parties under the residual liability coverage of Gloria Carlson's policy. However, the no-fault act does not require residual liability insurance covering all vehicles a person may drive.

Justice Williams, joined by Justices Fitzgerald and Moody, wrote that the no-fault act requires an insurer to provide its insured with residual liability coverage for certain losses caused by the *use* of a motor vehicle, and precludes an exclusion of liability coverage where the accident involves the insured's use of a vehicle owned by or registered in the name of a relative residing in the same household or a vehicle that was furnished or available for the frequent or regular use of the named insured.

1. The applicable sections of the no-fault act, when construed together, make it plain that the Legislature intended that a person using a motor vehicle that causes certain kinds of damages shall remain liable in tort, that an insurance policy in this state shall afford coverage for such liability, and that an owner or registrant of a motor vehicle shall purchase such a policy.

2. Gloria Carlson purchased a policy which specifically provided that she was covered when she used a "non-owned automobile", but excluded from the definition of non-owned automobile an automobile owned by a relative residing in the same household. Such an exclusion is repugnant to the clear directive of the no-fault act that a policy provide residual liability coverage for the *use* of a motor vehicle, and nowhere in the act is provision made for it.

3. Since the exclusionary clause in Gloria Carlson's policy is in conflict with the liability coverage required by the no-fault act, the statute must prevail and the policy must be read so as to provide the required coverage.

4. State Farm also alleged that coverage was precluded because the definition of a "non-owned automobile" excluded an automobile "furnished or available for the frequent or regular use of the named insured". Whether or not as a matter of fact Gloria Carlson's access to and use of her father's car

may be so characterized, as a matter of law this particular phrase of the exclusionary clause is repugnant to the no-fault act for the same reason that the "owned by a relative residing in the same household" phrase is repugnant, and is also invalid.

Justice Levin concurred in the result reached by Justice Williams, but not in the reason. The no-fault act does not require residual liability insurance covering all vehicles a person may drive. However, the exclusion in this case is unenforceable because it is unconscionable and contrary to the reasonable expectations of an insured where the insured, driving an automobile not owned or leased by him, has not been offered and has declined to purchase a rider deleting the exclusion or a specific exception from the exclusion or coverage for "frequent", "regular", or other atypical use of non-owned automobiles.

1. The obligation to obtain residual liability coverage is imposed by the no-fault act on an owner or registrant of a motor vehicle, but not on a licensed driver who does not own a vehicle. The no-fault act should be construed with deference to the policy judgment implicit in that legislative decision. Since the obligation to insure arises from the obligation to register rather than from the operation of a vehicle, it is reasonable to conclude that the obligation to insure does not extend to another vehicle for which the residual liability required by the no-fault act has been provided.

2. Residual liability coverage must be in force with respect to the vehicle for which it is purchased without regard to whether the owner or some other driver uses it. It does not follow that the act requires residual liability coverage when the owner uses a vehicle owned by someone else. The purpose in requiring residual liability coverage is to assure some minimum insurance for injuries for which there is residual tort liability. The legislative implementation of that purpose is limited to the requirement that there be a certain minimum coverage for each vehicle involved in an accident. To read the no-fault act as requiring an owner of one vehicle to carry residual liability coverage when operating another owner's vehicle, on which an independent obligation to carry residual liability coverage has been imposed, is to read the statute as requiring in that situation double the coverage it says is required. The no-fault act was amended retroactively to clarify that the required residual liability coverage is limited to the minimum residual liability coverage per vehicle. To read the statute nonetheless as requiring stacked coverage in the adventitious circumstance

of one owner driving another's vehicle is to read it in a manner contrary to the intent of the amendment and the purpose of the act to provide a minimum fund to pay for residual tort liability retained by the no-fault act.

3. The no-fault act has a policy of limiting the amount of required protection, except for medical care, to provide a minimum of coverage for all injured persons and their survivors at an affordable cost. The legislative purpose in this is not consistent with, and does not require, residual liability coverage varying in amount depending upon the circumstances of who is driving whose automobile and how many automobiles the driver owns. Many owners of motor vehicles choose to purchase non-owned automobile coverage in an amount they think they need and can afford. The issue here is the amount of residual liability insurance required by the no-fault act without regard to the insured's collectibility or ability to pay premiums. The Legislature did not require residual liability coverage varying in amount depending on chance.

4. Gloria Carlson's automobile insurance policy stated that it covered her when she drove a "non-owned automobile", which has the obvious and clear meaning of a vehicle not owned by the insured. The average consumer would rightfully assume that it referred to such instances as when he drove a rental car, or, perhaps more commonly, when he borrowed an automobile from a family member. The statement of exclusions does not mention the exclusion of this common instance but the apparently unambiguous term is given a definition which ascribes to it a special meaning. It cannot be assumed that the average consumer, coming upon a term in his policy which has an obvious and easily understood meaning, will nonetheless look up the definition, because it would not occur to the average person that the function of a definition is to change the meaning of a word so that it means something other than what it says. There is no evidence that Gloria Carlson knew of the exclusion, and it was embedded in the definition of a term which the average consumer would probably consider clear on its face without recourse to a separate definition.

5. Non-owned automobile liability insurance is purchased to protect against residual liability in tort when someone else's automobile is driven. The reasonable expectation of the purchaser is that there would be coverage regardless of whose car is being driven. The risks which lead to the purchase of residual liability insurance for non-owned automobiles are no less when the purchaser drives an automobile owned by a family member. Non-owned automobile liability protection pro-

vides the amount of liability coverage the purchaser considers appropriate for himself while he drives vehicles other than his own. A person does not expect that although the amount of liability coverage he considers appropriate for himself is in effect when he drives some non-owned vehicles, it will not be in effect when he drives a family member's automobile.

6. The exclusion from coverage is apparently designed to guard against a person having coverage on one vehicle and less coverage on another vehicle owned by him or regularly used by him. It seeks to protect the insurer against a policyholder failing to buy coverage on another vehicle he owns. To be effective, the provision must exclude an uninsured vehicle registered in the name of another that the insured regularly uses—a leased automobile. The exclusion is to this extent clearly reasonable and conscionable. It is written so broadly, however, that it encompasses situations beyond the evil it is designed to guard against. In seeking to protect itself against overreaching by the insured, the insurer has gone beyond reason and good conscience to exclude liability beyond the need for the exclusion. The power of the insurer to draft the policy is restricted by the doctrines of unconscionability and reasonable expectations.

7. Non-owned vehicle protection only needs to cover the risk above the amount of residual liability insured by the owner of virtually every automobile and is thus, in a sense, umbrella coverage. However, few consumers are aware that they may purchase a separate umbrella policy to protect themselves against the obscurant drafting of the no-fault insurance policy. This is not a case of a person owning two or more automobiles, buying insurance on one, and driving, or allowing another person to drive, an uninsured vehicle. Nor does it appear that Gloria Carlson frequently or regularly uses another person's automobile nor that she declined to purchase insurance for atypical use of non-owned automobiles.

The summary judgment of the trial court for Ruuska is affirmed, and the judgment of the Court of Appeals is affirmed.

Chief Justice Coleman, joined by Justices Kavanagh and Ryan, agreed with Justice Levin that the no-fault act does not require residual liability insurance covering all vehicles a person may drive, but did not agree that the exclusion in this case is unenforceable. It is inappropriate to guess what the reasonable expectations of Gloria Carlson may have been; she does not allege that she was uninformed of the exclusion or of the opportunity to purchase additional coverage. The Court of Appeals apparently reasoned that because some people do not

read the contracts they sign, even if the exclusions are unambiguous, the contracts are, in effect, void as to some parts. That reasoning is unpersuasive. The exclusion in this case is neither ambiguous nor contrary to the no-fault act.

90 Mich App 767; 282 NW2d 472 (1979) affirmed.

SEPARATE OPINION BY WILLIAMS, J.

1. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

*The no-fault act requires an insurer to provide its insured with residual liability coverage for certain losses caused by the use of a motor vehicle, and precludes an exclusion of coverage where an accident involves the insured's use of a vehicle owned by or registered in the name of a relative residing in the same household or a vehicle furnished or available for the frequent or regular use of the named insured.*

2. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — LEGISLATIVE INTENT.

*The relevant sections of the no-fault act, when construed together, make it plain that the Legislature intended that a person using a motor vehicle that causes certain kinds of damages shall remain liable in tort, that an insurance policy in this state shall afford coverage for such liability, and that an owner or registrant of a motor vehicle shall purchase such a policy (MCL 500.3101, 500.3131, 500.3135; MSA 24.13101, 24.13131, 24.13135).*

3. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

*Exclusion from the definition of "non-owned automobile" of an automobile owned by any relative residing in the same household in a no-fault insurance policy generally providing residual liability coverage while the insured is operating a non-owned automobile is repugnant to the clear directive of the no-fault act that a policy provide residual liability coverage for the use of a motor vehicle (MCL 500.3101, 500.3131, 500.3135; MSA 24.13101, 24.13131, 24.13135).*

4. AUTOMOBILES — INSURANCE — EXCLUSIONS — CONSTRUCTION OF POLICY.

*A no-fault insurance policy with an exclusionary clause which is invalid because it conflicts with the requirement of liability coverage of the no-fault act must be read so as to provide the required coverage.*

5. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

*Exclusion from the definition of "non-owned automobile" of an*

*automobile furnished or available for the frequent and regular use of the named insured in a no-fault insurance policy generally providing residual liability coverage while the insured is operating a non-owned automobile is repugnant to the requirement of the no-fault act that a policy provide residual liability coverage for the* use *of a motor vehicle (MCL 500.3101, 500.3131, 500.3135; MSA 24.13101, 24.13131, 24.13135).*

SEPARATE OPINION BY LEVIN, J.

6. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — NO-FAULT INSURANCE.

The obligation to obtain residual liability coverage is imposed by the no-fault act on an owner or registrant of a motor vehicle, but not on a licensed driver who does not own a vehicle (MCL 500.3101; MSA 24.13101).

7. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — NO-FAULT INSURANCE.

The obligation to obtain residual liability coverage does not extend to one driving the vehicle of another for which the residual liability required by the no-fault act has been provided (MCL 500.3101; MSA 24.13101).

8. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — NO-FAULT INSURANCE — LEGISLATIVE INTENT.

It is contrary to the legislative intent of the no-fault act, to provide a minimum insurance fund at low cost for residual tort liability retained by the act, to construe the act as requiring an owner of one vehicle to carry residual liability coverage when operating another owner's vehicle, on which an independent obligation to provide the coverage has been imposed (MCL 500.3131; MSA 24.13131).

9. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — NO-FAULT INSURANCE.

The policy of the no-fault act of providing fixed limits on the amount of required coverage, except for medical care, for all injured persons and their survivors at an affordable cost does not require residual liability coverage varying in amount depending upon the circumstances of who is driving whose automobiles and how many automobiles the driver owns.

10. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

*Definition of "non-owned automobile" in a no-fault insurance policy providing residual liability coverage so as to exclude an automobile furnished or available for the frequent and regular*

use of the named insured ascribes a special meaning to a term which has an obvious and easily understood meaning, and is unenforceable where there is no evidence that the insured knew of the exclusion and where it was embedded in a separate definition of the apparently unambiguous term, rather than mentioned in the statement of exclusions (MCL 500.3101, 500.3135; MSA 24.13101, 24.13135).

11. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

The reasonable expectation of the purchaser of non-owned automobile liability insurance is that there would be coverage regardless of whose car the purchaser is driving, and not that although it is in effect when he drives some non-owned vehicles, it will not be in effect when he drives a family member's automobile.

12. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

Exclusion of an automobile furnished or available for the frequent and regular use of the named insured in a no-fault insurance policy providing residual liability coverage goes beyond reason and good conscience to exclude liability beyond the need for the exclusion, which is to protect the insurer against a policyholder failing to buy coverage on another vehicle he owns or a regularly used leased automobile (MCL 500.3101, 500.3135; MSA 24.13101, 24.13135).

13. INSURANCE — EXCLUSIONS — UNCONSCIONABILITY — REASONABLE EXPECTATIONS.

The power of the insurer to draft the policy is restricted by the doctrines of unconscionability and reasonable expectations.

14. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

Definition of "non-owned automobile" in a no-fault insurance policy providing residual liability coverage so as to exclude an automobile furnished or available for the frequent and regular use of the named insured is unenforceable, because it is unconscionable and contrary to the reasonable expectations of an insured where the insured, driving a family member's automobile not owned or leased by him, has not been offered, and has not declined to purchase, coverage for "frequent", "regular", or other atypical use of non-owned automobiles (MCL 500.3101, 500.3135; MSA 24.13101, 24.13135).

OPINION BY WILLIAMS, J.

SEPARATE OPINION BY COLEMAN, C.J.

See headnotes 6-9.

15. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS
— CONSTRUCTION — REASONABLE EXPECTATIONS.

‘   *An unambiguous exclusion in a no-fault insurance policy provid-
ing residual liability coverage is not unenforceable as contrary
to the reasonable expectations of the insured where there is no
allegation that the insured was uninformed of the exclusion or
of the opportunity to purchase additional coverage.*

16. AUTOMOBILES — INSURANCE — RESIDUAL LIABILITY — EXCLUSIONS.

*Exclusion from the definition of "non-owned automobile" of an
automobile furnished or available for the frequent and regular
use of the named insured in a no-fault insurance policy provid-
ing residual liability coverage is neither ambiguous nor con-
trary to the no-fault act (MCL 500.3101, 500.3135; MSA
24.13101, 24.13135).*

*Fraser, Trebilcock, Davis & Foster, P.C.,* for
State Farm Mutual Automobile Insurance Com-
pany.

*Robins, Davis & Lyons,* by *Terry L. Wade (Wil-
liam R. Smith,* of counsel), for Dale Ruuska.

Amicus Curiae:

*William H. Morman* for Detroit Automobile In-
ter-Insurance Exchange.

WILLIAMS, J. This case tests the validity of an
"owned vehicle" exclusion[1] to residual liability
coverage required under the no-fault act.[2] The
automobile insurance policy in question provides
coverage for the named insured while driving a
"non-owned" vehicle; however, a subsequent defini-
tion of the term "non-owned automobile", as rele-

---

[1] Although in our order of December 21, 1979, granting leave to
appeal in this case, 407 Mich 948, we referred to the particular
exclusion as a "non-owned automobile" exclusion, such exclusion is
for all relevant purposes identical in form and purport to that which
we refer to here, as well as in our order of the same date granting
leave to appeal in *Raska v Farm Bureau Mutual Ins Co of Michigan,*
407 Mich 946, as an "owned automobile" exclusion.

[2] 1972 PA 294; MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

vant to the facts of this case, provides that a car owned by or registered in the name of a relative residing in the same household as the named insured or a car furnished or available for the frequent or regular use of the named insured is excluded from the category of a "non-owned automobile".

The appellant insurer sold insurance policies on the cars of both a father and a daughter living in the same household. The daughter drove the father's car with his permission and got into an accident. The insurer admits liability under the father's policy since it was being driven with his permission, but seeks a declaratory judgment to establish that the so-called "owned vehicle" exclusion lawfully precludes coverage under the daughter's policy.

Michigan's no-fault act requires an insurer to provide its insured with residual liability coverage for certain losses caused by "the use of a motor vehicle". Therefore, we interpret the no-fault act to preclude an insurer from denying liability coverage to its insured on the basis that the accident involved the insured's use of a vehicle owned by or registered in the name of a relative residing in the same household or on the basis that the vehicle was furnished or available for the frequent or regular use of the named insured.

We affirm the Court of Appeals but for different reasons and the circuit court for similar reasons.

## I. FACTS

On June 19, 1975, Gloria Carlson, while driving an automobile owned by her father, Arvid Carlson, with whom she then resided, collided with a motorcycle being driven by appellee Dale Ruuska,

which resulted in serious injury to him. Appellee Ruuska later filed a negligence suit against Gloria Carlson, her father, Arvid, who had given his consent to Gloria's use of the car, and a bar owner at whose establishment Gloria Carlson had allegedly become intoxicated earlier.

Arvid Carlson and Gloria Carlson each owned automobiles covered by separate policies of insurance with State Farm Mutual Automobile Insurance Company ("State Farm"). Each policy contained a liability limit of $25,000 respecting the bodily injury claims of any one person. State Farm does not dispute coverage of Gloria Carlson under her father's policy, as she was driving his car with his consent at the time of the accident. Rather, the present controversy centers on the question of the applicability to this accident of the added coverage of Gloria Carlson's separate policy of insurance with State Farm covering her own non-involved automobile.

Appellee Ruuska bases his contention that Gloria Carlson's own automobile insurance policy is applicable on a provision in that policy extending liability coverage to the use of a "non-owned automobile". Specifically, the policy provides:

"Use of Non-Owned Automobiles:
"* * * [S]uch insurance as is afforded by this policy with respect to the *owned motor vehicle* under:
"(1) Coverages A [bodily injury liability] and B [property damage liability] applies to the use of a *non-owned automobile* by:
"(a) the first *person* named in the declarations" (emphasis in original).

Thus since Gloria Carlson was the named insured, liability coverage would seem to be indicated.

Appellant State Farm, on the other hand, points

to the policy's definition of a "non-owned automo-
bile" as the premise for its denial of coverage
under Gloria Carlson's policy with respect to her
use of her father's car. This definition provides as
follows:

> "Non-Owned Automobile—means an *automobile,
> trailer,* or detachable living quarters unit, not (1) owned
> by, (2) registered in the name of, or (3) furnished or
> available for the frequent or regular use of the named
> insured, his spouse, or any relative of either *residing* in
> the same household, other than a *temporary substitute
> automobile,"* [3] (emphasis in original).

"Reside", when used with reference to the named
insured's household, is defined in the policy to
mean bodily presence in such household and an
intention to continue to dwell therein. Thus since
it is undisputed that Gloria Carlson, at the time of
the accident, was driving an automobile owned by
her father, with whom she had lived all her life,
the exclusionary clause in Gloria Carlson's policy
would ostensibly seem to deny coverage in this
instance.

Due to this dispute and because it appeared that
any judgment for Ruuska in the negligence suit
might exceed the limits of Arvid Carlson's policy,
State Farm sought a declaratory judgment to de-
termine its liability for any residual amount under
the policy issued to Gloria Carlson.

The circuit court granted appellee Ruuska's mo-
tion for summary judgment holding that while the

---

[3] A "temporary substitute automobile" is defined in the policy as an
automobile "not owned by the named insured or his spouse while
temporarily used with the permission of the owner as a substitute for
the described motor vehicle when withdrawn from normal use be-
cause of its breakdown, repair, servicing, loss or destruction". The
situation envisaged by this definition is inapplicable to the case at bar
since Gloria Carlson stated in her deposition that on the date of the
accident her car was used by her father and mother.

definition of a "non-owned automobile" was not ambiguous, it did contravene the provisions of the no-fault act and was therefore void and of no effect.

The Court of Appeals[4] unanimously affirmed the trial court's result, but it did so on different and divided reasoning. The majority of that panel determined that based on Michigan's financial responsibility act, MCL 257.501 *et seq.;* MSA 9.2201 *et seq.,* an exclusion to liability coverage of the type provided was theoretically valid. It found, however, that while the language creating the exclusion was not ambiguous, the limitation on the otherwise applicable coverage of "non-owned automobiles" was not designated explicitly enough—indeed the majority felt it was hidden among the policy provisions—and was therefore unenforceable as written.

The other member of the panel agreed with the rationale of the trial court, as well as opining that the instant exclusion was void because unauthorized by MCL 500.3009(2); MSA 24.13009(2)[5] which provides for only one exclusion from liability coverage not here applicable.

We granted leave to appeal in both this case and *Raska v Farm Bureau Mutual Ins Co of Michigan* (Docket No. 63507), ordering that they be argued

---

[4] 90 Mich App 767; 282 NW2d 472 (1979).

[5] This section provides in full as follows:

"When authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance referred to in subsection (3) of section 4 of Act No. 198 of the Public Acts of 1965, as amended, being section 257.1104 of the Compiled Laws of 1948: Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable."

and submitted together, one immediately following the other.

## II. DISCUSSION

The no-fault act states that the *owner* or *registrant* of a motor vehicle required to be registered in this state

> "*shall maintain security for payment of benefits under* personal protection insurance, property protection insurance, and *residual liability insurance.*" (Emphasis supplied.) MCL 500.3101(1); MSA 24.13101(1).

Under the terms of § 3131 such residual liability insurance

> "shall cover bodily injury and property damage which occurs within the United States, its territories and possessions, or in Canada. * * * *In this state this insurance shall afford coverage for automobile liability retained by section 3135.*" (Emphasis supplied.) MCL 500.3131; MSA 24.13131.

Subsections 3135(1) and (2) of the no-fault act, which concern the circumstances under which a person remains subject to tort liability, provided as follows at the time of the accident:

> "*A person remains subject to tort liability* for noneconomic loss *caused by his* ownership, maintenance, or *use of a motor vehicle* only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement" (emphasis supplied);

and that

> "[n]otwithstanding any other provision of law, *tort liability arising from the* ownership, maintenance or *use within this state of a motor vehicle* with respect to

which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his act or omission, he does not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3 year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured." (Emphasis supplied.) MCL 500.3135(1), (2); MSA 24.13135(1), (2).[6]

Sections 3101, 3131 and 3135 of the no-fault act, when construed together, make it plain that at the time of the accident the Legislature intended that

1. A person *using a motor vehicle* that causes certain types of damages shall remain liable in tort (§ 3135);

2. An insurance policy in this state shall afford coverage for such liability (§ 3131);

3. An owner or registrant of a motor vehicle shall purchase such a policy (§ 3101).

In this case, Gloria Carlson purchased an insurance policy which specifically provided that she was covered when she used a "non-owned automobile", which, of course, she did. However, in its motion for summary judgment in the trial court,

---

[6] A fourth instance of retained tort liability pertaining to damages of up to $400 to motor vehicles was added to § 3135 in 1979 and made effective July 1, 1980. MCL 500.3135(2)(d), (6); MSA 24.13135(2)(d), (6).

appellant State Farm contended solely that since her policy defined "non-owned automobile" to exclude "an *automobile* owned by any relative * * * residing in the same household", which exclusion her father's car unquestionably met, Gloria Carlson could not recover under her own insurance policy (emphasis in original).

We find such an exclusion repugnant to the clear directive of the no-fault act requiring that a policy purchased pursuant to that act provide residual liability coverage for the *use of a motor vehicle.* Nowhere in the no-fault act is provision made for the exclusion sought to be enforced by appellant State Farm in its motion for summary judgment. Section 3131 provides that liability insurance "shall afford coverage for automobile liability retained in section 3135", to wit, tort liability for certain enumerated types of loss caused by or arising from the "use of a motor vehicle". In a word, the Legislature has by section 3101(1) required the maintenance of insurance covering the type of liability here incurred, whereas the insurer has specifically sought by policy exclusion to thwart the Legislature's prescription. This it cannot lawfully do.[7] Therefore, since the exclusionary clause in Gloria Carlson's policy is in conflict with the liability coverage required by the no-fault act, the language of the statute must prevail with the result that the attempted exclusion is invalidated and the policy must be read so as to provide the

---

[7] Had the Legislature wanted to limit the portability of liability coverage it could easily have done so by less broad language, as it did, for example, in § 520(b) of the financial responsibility act. MCL 257.520(b); MSA 9.2220(b). There, in discussing the requisites for an automobile liability policy issued as proof of future financial responsibility, the Legislature, after requiring an owner's policy to designate by explicit description or appropriate reference all covered motor vehicles, limited the liability coverage to only those automobiles listed in the policy by speaking in terms of the use of "such" vehicle(s).

required coverage. See MCL 500.3101(3); MSA 24.13101(3); *cf. Boettner v State Farm Mutual Ins Co,* 388 Mich 482, 487; 201 NW2d 795 (1972); *Allstate Ins Co v DeFrain,* 81 Mich App 503, 506; 265 NW2d 392 (1978).

Appellant State Farm also alleged in its complaint that coverage was precluded in this instance due to the additional fact that the exclusionary clause eliminated from the definition of a "non-owned automobile" an automobile "furnished or available for the frequent or regular use of the named insured". Although as a factual matter Gloria Carlson's access to and use of her father's car may or may not have been sufficient to be characterized as "furnished or available for [her] frequent or regular use", we find that as a matter of law this particular phrase of the exclusionary clause is repugnant to the no-fault act and that summary judgment was properly granted to appellee Ruuska. The same reasoning that served to invalidate the "owned by a relative residing in the same household" phrase of the exclusionary clause also compels us to render the "frequent or regular use" phrase invalid. The Legislature chose to speak in broad language when it enunciated the circumstances under which a person remained subject to tort liability. It said simply, as here relevant, that the *use of a motor vehicle,* not either the infrequent or irregular use, or the frequent or regular use of a motor vehicle, could subject a person to tort liability under certain circumstances which would require a policy of insurance meeting certain standards. See § 3131. Thus this part of the exclusionary clause must also fall because it seeks to raise limitations on automobile use not sanctioned by the statute.[8]

---

[8] Although we have not explicitly considered subpart two of the

Our decision today is limited to the facts of this case. We do not consider, for example, whether an insurer, consistent with the terms of the no-fault act, may exclude the owner of an insured automobile from liability coverage during his or her use of an *uninsured* automobile he or she also owns. *Cf.* §§ 3101, 3113(b). Additionally, because we have invalidated the exclusionary clause as contrary to the public policy of the no-fault act, we need not reach the issues of whether the clause was ambiguous or hidden within the policy.

### III. Conclusion

Gloria Carlson paid a premium on her own automobile for statutorily required residual liability coverage. Her insurer State Farm has attempted to circumscribe this liability coverage as to her use of non-owned automobiles through a restrictive definition of the term "non-owned automobile". This definitional limitation, however, is contrary to the plain meaning of the no-fault act that requires residual liability coverage as to certain damages stemming from "use of a motor vehicle" and must be voided. Accordingly, we affirm the trial court's grant of summary judgment to appellee Ruuska. The Court of Appeals is also affirmed, but for different reasons.

FITZGERALD and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

LEVIN, J. *(concurring).* The question presented

"non-owned automobile" definition, *supra,* which would purport to limit liability coverage in this case because the non-owned automobile was "registered in the name of * * * any relative * * * residing in the same household", *i.e.,* it was registered to Gloria Carlson's father, such a limitation is so close in purpose and effect to the "owned by * * * any relative * * * residing in the same household" language that it too must be invalidated.

concerns the validity of an exclusion from residual liability insurance coverage. Residual liability insurance coverage protects against "residual" tort liability not eliminated under the no-fault act.

The no-fault act requires the owner or registrant of a motor vehicle to purchase an automobile insurance policy providing, among other coverages, "residual liability insurance".[1] Section 3131 of the no-fault act describes the residual liability coverage required under the act.[2] A 1978 amendment clarified the meaning of § 3131 as requiring only the minimum liability coverage described in § 3009(1).[3] Section 3009(1) states that a policy of

[1] "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and *residual liability insurance.* Security shall be in effect continuously during the period of registration of the motor vehicle." MCL 500.3101(1); MSA 24.13101(1) (emphasis supplied).

[2] "(1) Residual liability insurance shall cover bodily injury and property damage which occurs within the United States, its territories and possessions, or in Canada. This insurance shall afford coverage equivalent to that required as evidence of automobile liability insurance under the financial responsibility laws of the place in which the injury or damage occurs. In this state this insurance shall afford coverage for automobile liability retained by section 3135.

"(2) This section shall not require coverage in this state other than that required by section 3009(1). This section shall apply to all insurance contracts in force as of October 1, 1973, or entered into after that date." MCL 500.3131; MSA 24.13131.

[3] Section 3009 provides:

"(1) An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless such liability coverage as is provided therein is subject to a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any one accident, and, subject to said limit for 1 person, to a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any one accident, and to a limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident.

"(2) When authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated

residual liability insurance shall provide "such liability coverage as is provided therein" for not less than $20,000 for injury or death of one person, $40,000 for injury or death of two or more persons ("20/40 coverage"), and $10,000 for damage to property of others.[4] The amendment, retroactive to the effective date of the no-fault act, was apparently added in response to a concern that § 3131 might be read as requiring residual liability coverage beyond that required by § 3009(1).

Gloria Carlson owned an automobile and had obtained the insurance required by the no-fault act with respect to her vehicle. The residual liability coverage, $25,000 per person, $50,000 per accident and $10,000 for property damage, was somewhat greater than the minimum limits required by §§ 3131 and 3009(1). Her father, in whose household she was living, also owned an automobile covered by a separate insurance policy providing at least the coverage required by the no-fault act.[5]

The accident occurred while Gloria Carlson was driving her father's automobile. Her own automobile was not involved. Since the liability arising from the accident may exceed the coverage limits

by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance, referred to in subsection (3) of section 4 of Act No. 198 of the Public Acts of 1965, as amended, being section 257.1104 of the Compiled Laws of 1948: Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable." MCL 500.3009; MSA 24.13009.

[4] 1978 PA 460. Subsection (2), added to § 3131 of the no-fault act by this amendment, was made retroactively applicable to all insurance contracts in force as of October 1, 1973, or subsequently entered into; see fn 2 for text. Before the 1978 amendment, § 3131 consisted solely of what is now subsection (1) of § 3131.

[5] The record does not disclose the amount of liability coverage purchased by Gloria Carlson's father for the automobile involved in the accident.

of her father's policy, the question arises whether Gloria Carlson's policy is also applicable.

State Farm Mutual Automobile Insurance Company, the insurer under both policies, brought this action seeking a declaratory judgment that the coverage provided by Gloria Carlson's policy was not applicable. It concedes that the coverage of her father's policy applies.

State Farm contends that, although Gloria Carlson's policy states without pertinent qualification that "such insurance as is afforded by this policy with respect to the *owned motor vehicle* under * * * coverages [for liability] applies to the use of a *non-owned automobile* by * * * the first *person* named in the declarations [Gloria Carlson]" (italics in original), by reason of the definition of "non-owned automobile" coverage lapsed while she was driving her father's automobile.

The policy definition relied on by State Farm states that an automobile owned by any relative residing in the same household is not a "non-owned automobile":

"Non-Owned Automobile—means an *automobile, trailer* or detachable living quarters unit, not

"(1) owned by,

"(2) registered in the name of, or

"(3) furnished or available for the frequent or regular use of

the named insured, his spouse, or any relative of either *residing* in the same household, other than a *temporary substitute automobile.*" (Italics in original.)

The signers of the lead opinion conclude that the exclusion is "repugnant to the clear directive of the no-fault act requiring that a policy purchased pursuant to that act provide residual liability coverage for the *use of a motor vehicle*" (italics in

original),[6] and thus do not reach the question whether the exclusion is invalid as unconscionable or contrary to the reasonable expectations of an insured. They reason that, since § 3135 retains tort liability for above-threshold injury and such liability attaches for the "use" as well as the "ownership" of a motor vehicle (loss caused by the "ownership, maintenance, or use" of a motor vehicle), and since § 3131 requires coverage for tort liability retained by § 3135, the exclusion from coverage for tort liability arising from a driver's use of the owner's vehicle is invalid.

Although the signers of the lead opinion state that their decision would be limited to the facts of this case, it is difficult to discern a rationale that could limit the principles announced as the basis for their conclusion. If § 3131 requires coverage for whatever tort liability is retained by § 3135, how may an insurer exclude coverage when its insured drives another vehicle owned by him which he has chosen not to insure? Since § 3131 incorporates only the limitation in required coverage contained in *subsection (1)* of § 3009 (see fn 2), under what rationale would the Court qualify the construction, in the lead opinion, of § 3131 to allow an insurer to incorporate into its policies the "named person" exclusion provided for in *subsection (2)* of § 3009?[7]

I concur with the result of the lead opinion, but not with its rationale.

The no-fault act does not require residual liability insurance covering all vehicles a person may drive. Residual liability insurance is required for residual tort liability arising out of the ownership, maintenance or *use* of the vehicle in respect to

---

[6] *Ante,* p 336.

[7] There has been no change in § 3009 since the 1978 amendment of § 3131.

which a policy is required to be maintained and in
effect. An insurer is not required by the no-fault
act to provide portable coverage when the owner
drives another insured vehicle.[8]

The instant exclusion is, however, unenforcea-
ble, because it is unconscionable and contrary to
the reasonable expectations of an insured, where
the insured, driving an automobile not owned or
leased by him, has not been offered by the insurer
(or his agent) and has declined to purchase a rider
deleting or a specific exception from the exclusion
or coverage for "frequent" or "regular" or other
atypical use of non-owned automobiles.


I


The obligation to obtain residual liability cover-
age is imposed by the no-fault act on an "owner or
registrant of a motor vehicle required to be regis-
tered in this state". MCL 500.3101; MSA 24.13101.
A licensed driver who does not own a vehicle is
not required to obtain residual liability coverage.
This Court should construe the no-fault act with
deference to the policy judgment implicit in the
legislative decision not to require a driver to ob-
tain residual liability protection.[9]

Since the obligation to obtain residual liability
insurance is triggered by the obligation to register,
rather than by the operation of a vehicle, it is
reasonable to conclude that the obligation to so
insure does not extend to another vehicle for
which the residual liability protection required by
the no-fault act has been provided.

---

[8] Other provisions and policies of the act are implicated where a
person insured or covered by a no-fault policy drives an uninsured
vehicle. No opinion is intimated in that regard.

[9] Such an obligation could have been enforced by requiring proof of
no-fault insurance as a condition to obtaining a driver's license.

Residual liability coverage, to be sure, must be in force with respect to the vehicle for which it is purchased without regard to whether the owner or some other driver *uses* it. It does not follow that the act requires residual liability coverage when the owner uses a vehicle owned by someone else.

The purpose in requiring residual liability coverage is to assure that a person injured by use of a motor vehicle will have some minimum insurance fund available to compensate for injuries for which there is residual tort liability. This purpose is achieved by requiring each owner or registrant of a motor vehicle to obtain at least 20/40 coverage with respect to his vehicle. The legislative implementation of this purpose is limited to requiring that there be in effect at least 20/40 coverage *for each vehicle involved in an accident.*

To read the no-fault act as requiring an owner of one vehicle to carry 20/40 coverage when operating another's vehicle, with respect to which other vehicle an independent obligation to carry 20/40 coverage has been imposed, is to read § 3131 as requiring, in that situation, double the coverage it says it requires. When an owner operates his vehicle, single 20/40 coverage is required. Again, when a person who does not himself own an automobile operates another's vehicle, single 20/40 coverage is required. However, if the no-fault act is construed to require portable coverage, when an owner of one vehicle operates a vehicle owned by another, double 20/40 coverage is required. And if the operator of an insured vehicle owned by another owns more than one vehicle, say two or more, then, if the no-fault act is construed to require portable coverage, the insurer of each vehicle owned by the operator is presumably required to provide 20/40 coverage while its insured

is driving the other vehicle; so construed the act requires in such a case treble or greater 20/40 coverage.

Section 3131 was amended in 1978 to clarify that the residual tort liability coverage required by that section was limited to a minimum of 20/40 coverage per vehicle. To nonetheless read § 3131 as requiring stacked coverage in the adventitious circumstance of one owner driving another's vehicle is to read it in a manner contrary to the intent of the amendment and to the purpose of the act, which is simply to provide a minimum fund of $20,000/$40,000 to pay for residual tort liability retained by the act.

The no-fault act, in contrast with the tort law, provides limits on the extent of liability. For work loss and survivor's loss the initial limit was $1,000 in a single 30-day period not exceeding 3 years.[10] (The act provides for adjustment of that amount to reflect changes in the cost of living.)[11] Expenses incurred in obtaining ordinary and necessary services in lieu of those that an injured person would have performed is limited to $20 per day not exceeding three years.[12] Funeral and burial expenses are limited to $1,000.[13] Property protection benefits are limited to $1,000,000.[14] Residual liability is limited to $20,000/$40,000/$10,000.[15] The only exception to this policy of limiting the amount of required protection relates to medical care; the insurer is responsible for all reasonable charges for reasonable care without a fixed limit.[16]

---

[10] MCL 500.3107; MSA 24.13107 and MCL 500.3108; MSA 24.13108.

[11] *Id.* The currently applicable amount is $2049.

[12] *Id.*

[13] MCL 500.3107; MSA 24.13107.

[14] MCL 500.3121; MSA 24.13121.

[15] MCL 500.3131; MSA 24.13131 and MCL 500.3009; MSA 24.13009.

[16] MCL 500.3107; MSA 24.13107.

It is not consistent with the policy of the no-fault act of providing fixed limits on required coverage, with the one exception noted, to require in effect one 20/40 residual liability coverage when the owner drives his automobile or when a person who does not own an automobile drives another person's automobile, two 20/40 coverages when an owner drives his wife's automobile and three 20/40 coverages if an owner who owns two automobiles drives his wife's automobile. However great the amount of the work loss or survivor's loss or indeed medical loss, and however many automobiles in the family, there is only one work-loss, survivor's-loss and medical-loss recovery pursuant to the mandatory no-fault coverage. The same principle, designed to provide a minimum of coverage for all injured persons and their survivors at an affordable cost, is persuasive that the Legislature did not intend to require single or multiple residual liability coverage depending on the chance circumstance of who is driving whose automobile and how many automobiles, if any, the driver owns.

Many, perhaps most, owners choose to purchase non-owned automobile coverage. Such coverage will often provide an additional source of recovery for residual tort liability without regard to how this case is decided. That is entirely consistent with the residual tort liability insured against. Owners buy the residual liability coverage they think they need, having in mind their collectibility absent insurance. Since individual wealth varies, so too does the amount of coverage people think they need, as does their ability to pay premiums therefor.

The issue here is the amount of the residual liability coverage required by the no-fault act, the

amount which everyone must provide and pay for without regard to collectibility (or need therefor in those terms) and ability to pay. The Legislature did not, I am persuaded, require residual liability coverage varying in amount depending on chance.

## II

The exclusion from coverage while driving non-owned automobiles is, however, unenforceable.

### A

Gloria Carlson's automobile insurance policy stated that it covered her when she drove a "non-owned automobile". The term "non-owned automobile" has an obvious and clear meaning. To the average person buying insurance and, indeed, to many lawyers, it means simply a vehicle not owned by the insured. The average consumer, if he were to read this provision in his policy, would rightfully assume that it referred to such instances as when he drove a rental car or, perhaps more commonly, when he borrowed a car belonging to a member of his family. That is precisely what Gloria Carlson did: she borrowed her father's car. Certainly, as the Court of Appeals said, "To the layperson 'non-owned vehicle' would naturally include a vehicle owned by one's father".[17] However, what is probably the most common of instances when one would be driving a non-owned automobile is excluded from non-owned automobile coverage.

Even had Gloria Carlson read with care the list of exclusions in her policy, she would not have discovered this exclusion. The statement of exclusions from the non-owned automobile coverage

---

[17] *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767, 778; 282 NW2d 472 (1979).

describes two instances when such coverage is not provided,[18] but does not mention the instant exclusion. The listing of two, and only two, exclusions from the non-owned automobile coverage would create the impression that such exclusions are the only exclusions. One would expect that an exclusion of coverage for what would probably be the most common use of another's automobile—the borrowing of a family member's car—would be listed among the other exclusions.

To have been informed of the exclusion, Gloria Carlson would have had to turn to the section of her policy where this apparently unambiguous term is given a definition. It cannot be assumed that the average consumer, coming upon a term in his policy which has an obvious and easily understood meaning, will nonetheless look up the definition.[19]

Most people are unfamiliar with the lawyer's drafting technique of ascribing a special meaning to a word which has a commonly and readily understood meaning. It would not occur to the average person that the function of a definition is to change the meaning of a word so that it means something other than what it says.

---

[18] The policy provided:

"This insurance does not apply under:

"(a) Coverages A, B, C and M, to a *non-owned automobile*

"(1) while maintained or used by any *person* while such *person* is employed or otherwise engaged in an *automobile business* of the insured or of any other *person* or organization, or

"(2) while used in any other business or occupation, except a *private passenger automobile* operated or occupied by the first *person* named in the declarations or, if *residents* of the same household, his spouse or any relative of either." (Italics in original.)

[19] Although the words "non-owned automobile" in the statement of coverage were in bold face italic type and the policy states "(NOTE: The words in *bold face italic* type are defined under Definitions within each Section.)", most persons understand that the purpose of a definition is to clarify the meaning of the term defined. The meaning of this term appeared to be clear on its face.

There is no evidence that Gloria Carlson knew of the exclusion. The exclusion not only was not on the face page or the certificate or in the declarations of her policy,[20] it was not even contained in the list of exclusions but, rather, was embedded in the definition of a term which the average consumer would probably consider clear on its face without recourse to a separate definition.

## B

Apart from the language of the automobile insurance policy which would have led Gloria Carlson to believe that she was covered regardless of whose car she was driving, that perception would have been the reasonable expectation of one purchasing non-owned automobile liability insurance. One purchases non-owned automobile liability insurance to provide protection against residual liability in tort when one drives someone else's automobile. The potential for liability and the potential for an accident—the risks which lead one to purchase insurance—are no less, nor do they cease to exist altogether, simply because one drives an automobile owned by a family member.

---

[20] It is informative to compare the notice, or lack of notice, provided Gloria Carlson to what has been determined by the Legislature to be appropriate notice to an insurance consumer of an exclusion from general coverage which would otherwise appear to include what was excluded. Section 3009(2) allows an exclusion from liability coverage "when a vehicle is operated by a named person". Such exclusion of a named person from coverage that would otherwise be applicable to that person, which is analogous to the instant exclusion of certain automobiles from coverage which would otherwise be applicable to those automobiles, must first be "authorized by the insured". Second, such "named person" exclusion is expressly made invalid unless the following notice appears both on the face of the policy, the declaration page, or the certificate of the policy *and* on the certificate of insurance carried by Michigan drivers as the evidence of insurance required by the Michigan Vehicle Code, MCL 257.328; MSA 9.2028:

"Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable." MCL 500.3009; MSA 24.13009.

An owner of an automobile purchases non-owned automobile liability protection to provide the amount of liability coverage he considers appropriate for himself while he drives vehicles other than his own. Even if he expects that the owner of the borrowed automobile has purchased insurance, he generally has no idea of the amount of the coverage.

A person does not expect that, while the amount of liability coverage he considers appropriate for himself is in effect when he drives some non-owned vehicles, it will not be in effect when he drives a family member's automobile with the result that the amount of his liability coverage will be limited to whatever amount of liability coverage the family member chose to purchase.[21]

Suppose Gloria Carlson had chosen to purchase 100,000/200,000 of public liability insurance, her father had coverage of 250,000/500,000 and her brother, also living at home, had purchased only the minimum 20/40 coverage. Assume further that all three are acting in good faith and not in an effort to obtain higher coverage without paying the requisite premiums, each family member simply having purchased the coverage he or she thought appropriate for his or her financial circumstances. If the exclusion is enforceable, then if Gloria or her father drive the brother's automobile, say even no more than to move it out of the driveway onto the street so as to gain access to her or his own automobile, their non-owned automobile coverage would lapse during the time they were driving his automobile, even if they had never driven the brother's automobile before.

---

[21] See *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355; 314 NW2d 440 (1982), decided today, where the exclusion for borrowed vehicles owned by a "relative" is not limited to relatives with whom one resides. By its terms it applies if one borrows, perhaps for the first time, an automobile belonging to a cousin or an in-law.

## C

The exclusion from coverage is apparently designed to guard against a person having coverage on one vehicle and no coverage, or less coverage, on another vehicle owned by him or regularly used by him. The exclusion seeks to protect the insurer against a policyholder failing to buy coverage on another vehicle *he owns*. To be effective, the provision must exclude an uninsured vehicle registered in the name of another that the insured regularly uses—*a leased automobile.* The exclusion is to this extent clearly reasonable and conscionable.

The exclusion is written so broadly, however, that it encompasses situations beyond the evil it is designed to guard against. In seeking to protect itself against overreaching by the insured, the insurer has overwritten the exclusion and failed to protect the insured who acts in good faith. The exclusion is aimed at a particular evil; it goes beyond reason and good conscience to exclude liability beyond the need for the exclusion.

When a court limits such an exclusion, it is subject to the charge that it is rewriting the policy. Implicit in the charge is the assumption that the insurer can draft the policy as it sees fit. Its power to do so is, however, restricted by the doctrines of unconscionability and reasonable expectations.[22]

Since virtually every automobile is covered by residual liability insurance in some amount and every automobile is required to be so covered, non-owned automobile insurance is in a sense umbrella coverage. Because the primary risk is carried by the insurer of the owner, all that needs to be

[22] See Keeton, Basic Text on Insurance Law, §§ 6.2, 6.3, pp 348-361; See also Atiyah, The Rise and Fall of Freedom of Contract (Oxford University Press, 1979), pp 731, 734.

covered is the excess risk above and beyond the risk insured by the owner.

But non-owned residual liability insurance is not written or sold as umbrella coverage. A consumer who wishes umbrella protection must buy a separate umbrella policy. Few consumers are aware that in that manner they may protect themselves against the "obscurant drafting" of the automobile insurance policy. Moreover, carriers generally will not write umbrella coverage unless the primary or underlying insurance is for at least 100,000/300,-000.

Other alternatives do not appear to be feasible. An insured cannot purchase a rider deleting or a specific exception from the exclusion unless the insurer is willing to and offers to delete or make a specific exception upon payment of an additional premium. Nor can the insured reasonably be expected to purchase insurance on each automobile belonging to a relative or employer that he might potentially drive and on the automobiles of each neighbor or co-worker which a jury might decide he "frequently" or "regularly" uses.

This is not a case of a person owning two or more automobiles, buying insurance on one and himself driving or allowing another person insured under his policy to drive an uninsured vehicle. Nor does this appear to be a case of a person who frequently or regularly uses another person's automobile. In such a case the insurer would be justified in charging an additional premium because of the atypical use of non-owned automobiles although it may also be the insurer of the non-owned automobile.[23] Nor is this a case of a person who declined to purchase a rider deleting or a

[23] State Farm was, as earlier noted, the insurer of both Gloria Carlson's and her father's automobiles.

specific exception from the exclusion or to pay an additional premium for atypical use of non-owned automobiles.

I would affirm the Court of Appeals and remand to the trial court for entry of a declaratory judgment consistent with this opinion.

COLEMAN, C.J. *(to reverse)*. I agree with Part I of Justice LEVIN's opinion, but not with Part II, and would reverse the Court of Appeals.

It is presumptuous to guess what the reasonable expectations of Gloria Carlson may have been. She does not allege that she was uninformed of the exclusion or of her choice to purchase additional coverage through another endorsement or policy, although the opinions of Justice LEVIN and the Court of Appeals leap to that conclusion.

The Court of Appeals found that, pursuant to Michigan's financial responsibility act, MCL 257.501 *et seq.;* MSA 9.2201 *et seq.,* such an exclusion to liability coverage as is the subject of this controversy is theoretically valid. Although the exclusionary language was not ambiguous, the Court said that it was not set forth obviously enough and so was unenforceable.

The reasoning seems to be that because some people do not read the contracts they sign, even if exclusions are explained, the contracts are, in effect, void as to some parts but not as to others.

I find the reasoning of the Court of Appeals unpersuasive and I am also unpersuaded by the argument of my colleagues that, despite the unambiguous wording of the contract and a failure by defendant Gloria Carlson to allege lack of information of the exclusion or of the possibility of obtaining additional coverage, the exclusion must fall. Nor am I persuaded by the "reasonable expecta-

tion" argument. I would neither find the policy ambiguous nor contrary to the "no-fault" act.

Therefore, I would reverse the Court of Appeals and remand to the trial court for proceedings consistent with this opinion.

KAVANAGH and RYAN, JJ., concurred with COLEMAN, C.J.