DeMARIA v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 76620. Submitted December 18, 1984, at Detroit. Decided
    February 11, 1986.

Plaintiff, Guiseppe DeMaria, administrator of the estate of Mary
    T. DeMaria, deceased, brought an action in the Macomb Circuit
    Court seeking a declaratory judgment regarding the liability of
    defendant, Auto Club Insurance Association, on insurance poli-
    cies issued by it. This action followed a separate action in
    which a conditional consent judgment was entered in favor of
    plaintiff against the defendant's insureds, Gerard and Bernice
    Ouellette. The facts indicate that the decedent was killed while
    attempting to cross a street. The vehicle which struck the
    decedent was a 1968 Dodge Coronet driven by Gerard Ouellette.
    Gerard Ouellette and his wife, Bernice Ouellette, had three
    automobiles at the time of the accident: the 1968 Dodge Coro-
    net, a 1974 Dodge Swinger and a 1968 Chevrolet Corvette.
    Bernice Ouellette was listed as the principal named insured on
    the policy covering the Coronet. Also listed as an insured was
    Gerard Ouellette, who was also listed as principal driver of the
    vehicle. Another policy insured the Swinger and the Corvette
    under a single contract. Bernice Ouellette was listed as the
    principal named insured and the principal driver of both vehi-
    cles. Gerard Ouellette was not listed on this policy as a named
    insured. The policy covering the Coronet had a $20,000 limit
    for bodily injury for each person under the residual liability
    clause and a $40,000 limit for each occurrence. The policy
    covering the Swinger and Corvette contained the same limits.
    Although two vehicles were insured under a single contract
    and a third vehicle insured under another contract, separate
    premiums were paid for each vehicle. The trial court, George R.
    Deneweth, J., ruled that there were three separate policies in
    all and granted plaintiff a summary judgment on the grounds
    that defendant was liable to the plaintiff on the three policies
    for coverage totalling $60,000. Defendant appeals. *Held:*

        1. Because the Coronet is not a nonowned automobile under

REFERENCES

Am Jur 2d, Automobile Insurance §§ 2-4, 126 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Automo-
    bile Insurance.

the terms of the policies covering the Swinger and the Corvette, Mr. Ouellette is not covered under the exclusionary definition of a nonowned automobile contained in those policies. However, the trial court properly determined that the exclusionary definition of a nonowned automobile contained in the Swinger and Corvette policies was invalid and unenforceable under the holding of *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321 (1982).

2. Gerard Ouellette is definitionally a named insured under all three of the policies. The ownership of the vehicle should not be determinative.

3. The trial court correctly determined that because separate premiums were paid for both the Swinger and the Corvette, although included in one policy, there existed two policies covering the vehicles not involved in the accident.

4. Defendant is liable to plaintiff for $20,000 on each policy, the two covering the non-involved vehicles and the one covering the involved vehicle. Defendant insurer is liable to plaintiff in the amount of $60,000.

Affirmed.

1. Insurance — Automobiles — Residual Liability — Exclusions.
   Exclusion from the definition of "non-owned automobile" of an automobile owned by, furnished or available for the frequent or regular use of the named insured, relative or other resident of the same household of such named insured in a no-fault insurance policy generally providing residual liability coverage while the insured is operating a non-owned automobile is invalid.

2. Insurance — Automobiles.
   There are two policies of insurance each covering a separate vehicle, although both vehicles were included in one policy, where separate premiums were paid for each vehicle.

3. Insurance — Contracts — Judicial Construction.
   An insurance policy must be enforced as written and the courts will not make a new agreement or give it a meaning contrary to its express terms where the provisions of the insurance policy are unambiguous.

*Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.* (by *Bruce L. Jerris*), for plaintiff.

*Glime, Daoust, Wilds, Rusing & Widlak* (by *Herbert J. Rusing* and *George S. Cabot*), for defendant.

Before: V. J. Brennan, P.J., and Cynar and C. W. Simon, Jr.,* JJ.

Per Curiam. Defendant appeals as of right from a Macomb Circuit Court order entered on January 31, 1984, in which summary judgment was granted to plaintiff, on the grounds that defendant was liable to plaintiff on three insurance policies for coverage totalling $60,000. GCR 1963, 117.2.

On September 26, 1978, Gerard Ouellette, the defendant's insured, struck and killed Mary Theresa DeMaria, the plaintiff's decedent, as she was attempting to cross Eleven Mile Road near Hoover Road in Warren. At the time of the accident, Ouellette was driving a 1968 Dodge Coronet.

Gerard and Bernice Ouellette had three automobiles: a 1974 Dodge Swinger; a 1968 Dodge Coronet; and a 1968 Chevrolet Corvette. Bernice Ouellette was listed as the "principal named insured" on policy #Ex-7-271-41-90-02, issued by defendant. This policy covered the 1968 Coronet. Also listed as an insured was Gerard Ouellette, who was also listed a principal driver of the vehicle. Policy #Ex-9-271-41-90-01, also issued by defendant, insured the 1974 Swinger and the 1968 Corvette under a single contract. Bernice was listed as the principal named insured and the principal driver of both vehicles. Gerard was not listed on this policy as a named insured.

The policy covering the 1968 Coronet had a $20,000 limit for bodily injury for each person under the residual liability clause and a $40,000 limit for each occurrance. The policy covering the Swinger and the Corvette contained the same limits. Although two of the cars were insured under a single contract and the Coronet was in-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sured under another single contract, separate premiums were paid for each car. The trial court ruled that there were three separate policies in all.

On May 26, 1981, in a separate action, the trial court entered a consent judgment against Mr. and Mrs. Ouellette, the defendants therein, pursuant to the parties' stipulation for a conditional consent judgment. The stipulation in essence was an agreement that the Ouellettes were liable for the maximum amount of insurance coverage, $20,000, under the policy covering the Coronet, unless the plaintiff should commence a separate declaratory action against the Ouellettes' insurer and receive a determination that the Ouellettes had more coverage than $20,000. On November 18, 1981, Guiseppe DeMaria, as administrator of the estate of Mary Theresa DeMaria, deceased, commenced such an action, the case at bar.

Between August 24, 1982, and January 28, 1983, both sides filed motions for summary judgment. On January 28, 1983, the trial court filed an opinion which denied defendant's motion and partially granted plaintiff's motion. The court granted partial summary judgment to plaintiff and held that the two insurance contracts' coverage applied to the September 28, 1978, accident under the holding of *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321; 314 NW2d 184 (1982). The court, however, withheld judgment on whether the two-car contract represented on policy or two policies. On July 27, 1983, a hearing was held and during this hearing defendant's counsel admitted that the second insurance contract represented two insurance policies. Also, on this date, orders were filed consistent with the trial court's January 28, 1983, opinion.

On September 21, 1983, the defendant moved for

a rehearing and plaintiff similarly responded. On January 31, 1984, after the rehearing, the trial court granted summary judgment to plaintiff on all issues. It is from this order that defendant appeals.

Defendant first claims that the "non-owned automobile" exclusion contained in the policy covering the Swinger and the Corvette (the two vehicles not involved in the accident) was enforceable as written. Thus, defendant argues that the trial court erred in holding that *Ruuska, supra,* controlled the case.

We must first determine whether, pursuant to the terms of the policies of insurance issued by defendant covering the noninvolved vehicles, the insureds should be entitled to coverage for excess liability. If we decide that coverage is excluded by the policies' terms, then we must decide how, if at all, *Ruuska, supra,* affects the exclusionary clauses.

*Terms of policies:*

The automobile insurance policy (#Ex-9-271-41-90-01) issued by defendant states:

> This policy form together with the Declaration Certificate constitutes the complete policy. This insurance is against only such and so many of the perils named in the Declaration Certificate as are indicated by a specific premium entry. The limit of the Exchange's liability against each of such perils shall be as stated in the Declaration Certificate and subject to the terms of this policy form.

Under the Bodily Injury Liability section, Section I, the insurer (here defendant) agreed:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury . . . including death resulting therefrom, . . .

\* \* \*

arising out of the ownership, maintenance or use . . . , of the owned automobile or of any non-owned automobile . . . .

Under the "Persons Insured" subheading, the policy provided:

The follwing are insureds under Section i:
a) with respect to the owned automobile,
(1) the named insured and any relative,

\* \* \*

b) with respect to a non-owned automobile used with the permission of any person having the right to grant it, and providing the automobile described in the Declaration Certificate is a private passenger . . . automobile,
(1) the name insured, if an individual, and
(2) any relative, provided such relative or his spouse does not own a private passenger . . . automobile;

\* \* \*

The insurance afforded under Section i applies separately to each insured against whom claim is made or suit is brought . . . .

Under the definitional portion of Section i of the policy, a "named insured":

means the person or persons named in Item i of the Declaration Certificate, and if an individual, includes the *spouse,* if a resident in the same household; provided, with respect to a non-owned automobile, if two or more named insured are individuals, "named insured" means the individual, and spouse so described, named first therein . . . . [Emphasis added.]

In policy #Ex-9-271-41-90-01, Bernice Ouellette is the named insured in Item 1 of the Declaration Certificate. Gerard Ouellette is her spouse. Therefore, under Section I, Gerard Ouellette would be a named insured with respect to an owned or a non-owned automobile. However, the inquiry does not end here.

The term "owned automobile" is defined in the policy as:

> the vehicle described in the Declaration Certificate and, as defined herein, a temporary substitute automobile, a replacement automobile, and a trailer owned by the insured . . . .

Under this definition, the Coronet is not an owned automobile. The Swinger and Corvette are owned automobiles, as they are described in the Declaration Certificate.

The "non-owned automobile" definition in the policy states:

> (i) "non-owned automobile" means any automobile or trailer, other than a temporary substitute automobile, not owned by, furnished or available for the frequent or regular use of the named insured, relative or other resident of the same household of such named insured, however, an automobile or trailer rented or leased by the named insured or relative for a continuous period of 30 days or less shall not be deemed to be furnished or available for frequent or regular use . . . .

The Coronet is not a "non-owned automobile" under the terms of the contract for the uninvolved vehicles. First, a "nonowned automobile" must be "not owned by the insured." The Coronet is owned by Mrs. Ouellette, the named insured, but not "owned" by Gerard, her husband, a named in-

sured. Second, a "non-owned automobile" must be "not furnished or available for the frequent or regular use of the named insured." The Coronet was furnished and available for the regular use of Mr. Ouellette, a named insured. Since the Coronet is not a non-owned automobile, under this definition, Mr. Ouellette would not be covered under section (b) of Section I.

Plaintiff argues that under *State Farm v Ruuska, supra,* the "non-owned automobile" definition is invalid and, therefore, coverage under the Swinger and Corvette policies applies here. The trial court found that *Ruuska* applied and we affirm the lower court's findings.

The lower court stated:

> In *Ruuska,* Gloria Carlson and her father both owned automobiles which were insured by State Farm at the time of the accident, under separate policies, each with a liability limit of $25,000 for bodily injury to one person. State Farm did not dispute its liability under the policy issued to Gloria Carlson's father, as she was driving his car at the time of the accident. Rather, State Farm disputed its liability under the policy issued to Gloria Carlson, pointing to the fact that, although her policy provided for liability coverage for her while she was driving a "non-owned automobile", the term "non-owned automobile" was defined in the policy as one not owned by or available for the frequent or regular use of the named insured or not owned by a relative residing in the same household as the named insured. Thus, State Farm argued that because Gloria Carlson was residing with her father at the time of the accident, and was driving his car, the above definition would exclude her from coverage.
>
> Four justices agreed that the exclusionary definition of non-owned automobile in Gloria Carlson's policy was invalid but disagreed as to rationale. Justices WILLIAMS, MOODY and FITZGERALD found

that this exclusionary clause was repugnant to the no-fault act and was, therefore, invalid. They reasoned that the no-fault act, MCL 500.3101 *et seq.* [MSA 24.13101 *et seq.*], clearly directs that a policy must provide residual liability coverage for the use of the motor vehicle:

\* \* \*

The lead opinion in *Ruuska* was specifically limited in its holding to the facts of that case. 412 Mich at p 338.

In a separate opinion, concurring in result but not rationale, Justice LEVIN found that the exclusionary clause was unenforceable because it was unconscionable and contrary to the reasonable expectations of the insured.

In the instant case, Defendant relies on a definition of "non-owned automobile" which is substantially similar to the definition of this term which was found repugnant to the no-fault act by three members of the Supreme Court in *Ruuska.*

Defendant seeks to distinguish *Ruuska* on the basis that all four Justices focused on the effect of the exclusionary language to exclude coverage under the policy owned by the *named insured* when the named insured was involved in an accident in another vehicle. Defendant argues that in the instant case "Gerard Ouellette was not a named insured under the policy insuring the 1968 Corvette and the 1978 Dodge Swinger . . . ." Defendant also argues Bernice Ouellette could not reasonably expect that when one owned vehicle was involved in an accident, the other policies would apply.

Plaintiff correctly points out that Gerard Ouellette is definitionally a named insured under all of the policies.

The question is thus whether the fact that Bernice Ouellette owned the automobiles and purchased the insurance in her name sufficiently distinguishes *Ruuska* from this case.

While the opinion of Justices WILLIAMS, MOODY and FITZGERALD purports to limit itself to the facts of *Ruuska* it is hard to envision such a limitation.

They ruled the "non-owned automobile" limitation is contrary to the plain meaning of the no-fault act that requires residual liability coverage as to certain damages stemming from "use of a motor vehicle." Such a conflict does not turn upon whether the insured bought the policy personally or was an additional named insured. It is void either way. This Court can only conclude that Justices WILLIAMS, MOODY and FITZGERALD would hold the clause void on the facts herein.

Justice LEVIN felt the exclusion was unenforceable because the exclusion lay in the definition of a word which has a readily understood meaning. He also felt Gloria Carlson's perception was she would be covered by insurance regardless of whose car she was driving. Further, he found that it overreached the evil it was to guard against thereby failing to protect the insured who acts in good faith.

The present case involves a husband and wife. The ownership of the vehicle should not be determinative because couples frequently keep the title in only one name to avoid potential joint liability as owners. Further, as a matter of convenience, one spouse may well bargain for insurance coverage for both spouses, yet the insurance company might insist on one spouse being designated as the principal named insured or the "policyholder." In such a case, it would be unjust to make coverage dependent on whether one is a "principal named insured" or "policyholder" or merely a named insured when the expectation was that both would be covered and both as a practical matter have equal rights in the vehicles as marital property.

The court concludes Defendant's Motion for Summary Judgment must be denied. The court is well aware that other Judges in this Circuit have narrowly applied *Ruuska,* finding it distinguishable because the person involved in the collision was not a "policyholder." After much thought, this court respectfully disagrees. While this court recognizes the principle on which the other decisions rest, this court is satisfied that the basic philoso-

phy of at least four Justices of the Supreme Court was to extend additional coverage in the kind of cases involved here. [Emphasis in original.]

We find the trial court's reasoning sound and adopt it for our opinion.

The next issue for our determination is the extent of coverage from the policies on the two vehicles not involved in the accident. First, we agree with the trial court's determination that because separate premiums were paid for each automobile (although included in one policy), there existed two policies covering the vehicles not involved in the accident. Furthermore, even if we were to find that there was only one policy covering the two vehicles, the pyramid clause prohibiting duplication of benefits does not apply to death indemnity coverage, a situation present in the instant case. Defense counsel did admit that the policy in question represented two policies.

Here, the purpose of the residual clauses in both policies is to provide coverage up to a maximum of $20,000 per person and $40,000 per incident. Thus, defendant is liable to plaintiff for $20,000 on each policy, the two covering the noninvolved vehicles and the one covering the involved vehicle.

> Where the provisions of an insurance policy are unambiguous, the policy must be enforced as written and the courts will not make a new agreement or give it a meaning contrary to its express terms. [*Nichols v Kwek,* 139 Mich App 633, 638; 363 NW2d 29 (1984), lv den 422 Mich 931 (1985).]

We conclude that defendant insurer is liable to plaintiff in the amount of $60,000. We note that the Supreme Court's decision in *DAIIE v Widling,* 420 Mich 549; 362 NW2d 227 (1984), reh den 421 Mich 1202 (1985), is inapplicable to the instant

case in as much as the trial court's order of summary judgment in that case was reversed on the ground that there existed a material issue of fact in dispute.

Affirmed. We retain no further jurisdiction.